# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

DR. FARID KARIMI,

                **Plaintiff,**

      vs.

STATE OF NEBRASKA, DEPARTMENT OF HEALTH AND HUMAN SERVICES, STACEY SWEENEY, in her official and individual capacities; DR. ROGER DONOVICK, in his official and individual capacities; SHERI DAWSON, in her official and individual capacities; and MARK LABOUCHARDIERE, in his official and individual capacities;

                **Defendants.**

4:18CV3088

MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Dismiss, ECF No. 32, filed by Defendants State of Nebraska, Sheri Dawson in her official capacity, and Mark LaBouchardiere in his official capacity; and the Motion to Dismiss, ECF No. 30, filed by Defendant Stacey Sweeney in her individual and official capacities. For the reasons stated below, the Motions will be granted.

## BACKGROUND

The following facts are a summary of those alleged in the Amended Complaint, ECF No. 24, and assumed true for the purposes of the Motions to Dismiss. Defendant, State of Nebraska operates the Lincoln Regional Center ("LRC"), an entity responsible for the diagnosis and treatment of patients with mental health issues. The State of Nebraska receives federal funds to care for LRC patients who are eligible for Medicaid, Medicare, or Social Security disability. Plaintiff Dr. Farid Karimi works as a forensic

psychiatrist at the LRC and other locations.[1] In February 2016, LRC hired Karimi to perform forensic evaluations for the courts, to assist with training psychiatric residents in forensic rotation, and to establish a forensic fellowship program. Karimi properly performed all duties and assignments.

Defendant Stacey Sweeney was a State of Nebraska employee and functioned as the LRC Chief Operating Officer. She was supervised by Defendant Sheri Dawson, a Department of Health and Human Services ("DHHS") employee. Defendant Dr. Roger Donovick was LRC Chief Medical Officer. Defendant Mark LaBouchardiere is the current DHHS Facilities Director and has been in charge of LRC since February 2018. The State of Nebraska is responsible for training, hiring, supervising, and monitoring all persons who work at LRC, and contracts for services as dictated by patient needs.

After several months of employment, Karimi noted procedural and/or medical irregularities occurring at LRC. He reported these violations to Donovick, Sweeney, and/or Dawson. At LRC, Karimi provided programs and services for patients with disabilities. Most of these patients were not aware of their rights under the Rehabilitation Act, 29 U.S.C. §§ 701-796.[2] Karimi "has protested to Sweeney and Donovick, and the

---

[1] Although Karimi's Amended Complaint, ECF No. 24, stated he works at LRC, Karimi submitted indexes in opposition to Defendants' Motions to Dismiss, ECF Nos. 160, 176, which included an affidavit signed by Karimi's attorney stating "I was recently informed by both my client and counsel for the State of Nebraska that Dr. Karimi had his employment terminated on November 16, 2018. He was not given any pre-termination due process hearing."

[2] Karimi also alleges that these patients were not aware that treatment programs they received did not always comply with the governing rules and regulations under the Rehabilitation Act. However, whether the treatment programs complied with the Rehabilitation Act is a legal conclusion not an assertion of fact.

Defendant State Human Resources Department,[3] and later to Dawson and LaBouchardiere, the denial of these program benefits to disabled patients he has treated." Am. Compl., ECF No. 24, Page ID 87. Karimi alleges that "Defendants took no action to correct the deficiencies cited by Plaintiff, and engaged in retaliatory conduct against him for reporting said deficiencies." *Id.* at 88.

Specifically, Karimi alleges Defendants, under the direction of Donovick and Sweeney and with the approval of Dawson and later LaBouchardiere:

1) followed outdated treatment policies and refused to re-evaluate or put into place policies and procedures to secure patient safety and well-being;

2) failed to use highly restrictive status restraints on patients requiring this status which resulted in repeated assaults and injuries to LRC employees;

3) allowed the assistant director of nursing to follow the orders of non-medical psychologists which disturbed the proper performance of medical activities and procedures vital to patient care;

4) failed to follow the level of security required for patient monitoring; and

5) through staff psychologists, requested forced medication orders from the Court for one of Karimi's patients without informing the attending psychiatrist.

Karimi also alleges that one or more of the Defendants:

1) changed patient orders dictated by attending physicians, such as discharging patients or removing them from suicide watch (Sweeney and Donovick);

---

[3] Although Karimi states he protested to "Defendant State Human Resources Department" it is unclear which Defendant Karimi is referencing. The Court will assume he is referring to DHHS.

2) inaccurately charted time with patients, and unnecessarily denied visitation rights to some patients (Sweeney and Donovick);

3) told staff not to listen to or follow Karimi's orders (Donovick);

4) interfered with Karimi's patient relations[4] (Sweeney);

5) allowed improper distribution of the controlled substance Ambien to Karimi's patients without Karimi's knowledge (State of Nebraska, Sweeney, and Dawson);

6) moved dangerous patients admitted under Karimi's name from in-patient to residential beds in violation of Court orders (Sweeney with Donovick and Dawson's approval);

7) housed mentally challenged and disabled individuals without providing them with necessary and appropriate needed services (State of Nebraska); and

8) jeopardized patient care by not following the recommendations of physicians and outside consultants (State of Nebraska).

Karimi also reported general concerns about the functioning of LRC which included:

1) assignment of a psychologist to oversee the medical units which should have been run by medical doctors;

2) use of job threats to staff to cover management deficiencies, such as ordering minutes of official meetings to be changed and authorizing documents suggesting nurses were working when they were not;

---

[4] Specifically, in June 2018, Karimi was asked by Lincoln Police to see a patient and Sweeney ordered the patient removed from LRC before Karimi could see the patient.

3) assignment of psychologists without medical expertise to be supervisors in charge of medical and psychological patient treatment, resulting in psychiatrists working under improper supervision;

4) changes to the minutes of staff meetings and falsification of information needed to meet requirements of state and federal agencies;

5) allowing an unlicensed professional to operate the facility in violation of state statutes and regulations;

6) mismanagement resulting in attacks on technicians; and

7) understaffing resulting in diminished patient care and a back-up in admissions, causing patients to wait in jail.

Karimi alleges he "has attempted to bring the Defendants into compliance with federal regulations and requirements under the Rehabilitation Act, but has been admonished and punished for his efforts in this regard." *Id.* at 93. Karimi alleges that due to his reporting of the activities at LRC he has been subjected to retaliatory acts from Defendants. Specifically, he alleges Defendants altered his job duties in violation of his contract and initial job posting; deprived him of decision-making capacities in the hospital; did not inform him about the Policy and Procedure Committee or Improvement Committee meetings to which he was assigned; eliminated the Steering Committee to limit his ability to participate in proper facility management; stopped including him on mass emails; negated orders he issued; failed to follow his medical instructions; and gave him a higher work load than other physicians. He also alleges Donovick and Sweeney bypassed him in connection with his patients' care and made medication recommendations to the court without his input.

He further alleges that on or about October 6, 2016, the State of Nebraska, Sweeney, and Donovick falsely accused him of making terroristic threats and communicated this to other physicians and third parties. He also alleges that the State of Nebraska, through Scott Rassmussen, Sweeney, and Donovick asked other physicians to report that he made terroristic threats. He states that on or about November 2016, Donovick and Sweeney falsely accused him of attempting to kidnap a patient and communicated this to other physicians and third parties. He states that Defendants accused him of being emotional and unprofessional, and, on January 6, 2017, State of Nebraska and Donovick gave him a written warning for being disrespectful, unprofessional, and hostile toward staff and leadership members although such accusations were false. He states that although he was initially told he would lead the training of psychiatry residents, this changed on or about February 2017. He contends that In March 2018, Sweeney falsely accused him of giving a patient an incorrect prescription and practicing outpatient psychiatry from his office at LRC. Finally, he alleges that the State of Nebraska and Donovick initially refused to allow him to withdraw his resignation. Karimi contends that he has suffered emotional pain and injury, humiliation, fear, and embarrassment.

Karimi's Amended Complaint, ECF No. 24, filed on October 10, 2018, sets forth eight causes of action. His first, second, and third cause of action are claims under 42 U.S.C. § 1983 and 42 U.S.C. §1988(a). His fourth and fifth cause of action are claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. His sixth, seventh, and eighth causes of action are state-law defamation claims against Sweeney, Donovick, and Dawson respectively, in their individual capacities.

Sweeney filed a Motion to Dismiss, ECF No. 30, asking the Court to dismiss the Amended Complaint against her for failure to state a claim on which relief can be granted and based on qualified immunity. State of Nebraska; Dawson, in her official capacity; and LaBouchardiere in his official capacity filed a Motion to Dismiss, ECF No. 32, based on failure to state a claim and sovereign immunity.[5]

## STANDARD OF REVIEW

### I. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "[M]ootness and standing are questions of subject matter jurisdiction." *Doe v. Nixon*, 716 F.3d 1041, 1047 (8th Cir. 2013). "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young Am. Corp. v. Affiliated Comput. Servs.,* 424 F.3d 840, 843-44 (8th Cir. 2005) (citing *Titus*, 4 F.3d at 593). In a factual challenge to jurisdiction, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730. The plaintiff has the burden of proving jurisdiction exists. *Id.* "Sovereign immunity issues are jurisdictional issues, and state defendants may invoke

---

[5] The brief submitted by Defendants State of Nebraska, Dawson, and LaBouchardiere, ECF No. 33, only addressed Karimi's §1983 and §1988(a) claims and not his Rehabilitation Act claims despite asking the Court to dismiss claims one through five. Karimi argues that his Amended Complaint also states a claim under the Rehabilitation Act.

sovereign immunity with a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *James v. Nebraska*, No. 8:09CV112, 2009 WL 10664338, at *3 (D. Neb. Nov. 17, 2009) (citing Fed. R. Civ. P. 12(b)(1); *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000)).

"As no statute or rule prescribes a format for evidentiary hearings on jurisdiction, 'any rational mode of inquiry will do.'" *Brown v. Grand Island Mall Holdings, Ltd., No. 4:09CV3086*, 2010 WL 489531, at *2 (D. Neb. Feb. 8, 2010) (quoting *Osborn*, 918 F.2d 724, 730). "So long as the court has afforded the parties notice and a fair opportunity to be heard, an evidentiary hearing is unnecessary." *Brown*, 2010 WL 489531, at *2 (citing *Johnson v. United States*, 534 F.3d 958, 964-65 (8th Cir. 2008)).

## II. **Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation."

*Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

Generally, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618–19 (8th Cir. 1995) (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This immunity reaches not only state claims brought in federal court against a state, *see Randolph v. Rodgers,* 170 F.3d 850, 859 (8th Cir.1999) (citing *Pennhurst State Sch. & Hosp.,* 465 U.S. at 100), but also federal claims brought in federal court against a state, *see Doe v. Nebraska,* 345 F.3d 593, 597–98 (8th Cir. 2003).

"While Eleventh Amendment immunity provides states with a strong defense against suit in federal court, this immunity 'is not absolute.'" *Thurber v. Nebraska*, No. 4:06CV3174, 2006 WL 3392191, at *3 (D. Neb. Oct. 26, 2006) (quoting *Doe,* 345 F.3d at 597). "A state may be subject to suit where: (1) the state has unequivocally waived its sovereign immunity and consented to suit in federal court; or (2) Congress has unequivocally, through legislation, abrogated state immunity in order to effectuate the provisions of the Fourteenth Amendment." *Id.* (citing *Kentucky v. Graham,* 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp.,* 465 U.S. at 97–100; *Burk v. Beene,* 948 F.2d 489, 492–94 (8th Cir .1991)).

## I.      First, Second, and Third Causes of Action - 42 U.S.C. § 1983 Claims

Karimi's first, second, and third causes of action are brought under 42 U.S.C. § 1983 alleging violations of his constitutional rights. Section 1983 creates a private right of action to remedy violations of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). The cause of action is available against "[e]very person who acts under color of state law to deprive another of a constitutional right." *Id.* (citation and internal quotation marks omitted).

 "[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 120 (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). Suits brought against a state agency are also generally proscribed by the Eleventh Amendment. *Gray v. Ark. Dept. of Human Servs.*, 406 F. App'x. 84, 84 (8th Cir. 2010) (citing *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989)). Thus, Karimi's § 1983 actions against the State of Nebraska and DHHS will be dismissed.

When state officials are sued in their official capacity, the suit is effectively against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, "[t]he Eleventh Amendment also bars a suit against state officials when the state is the real party in interest." *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 447 (8th Cir. 1995) (citing *Pennhurst State Sch. & Hosp.,* 465 U.S. at 101). Thus, Karimi's § 1983 claims against Dawson, LaBouchardiere, and Sweeney in their official capacities seeking "compensatory and punitive damages" will be dismissed.

However, "a suit can be brought in federal court against officials in their official capacity for prospective relief to which any state expenditures are merely ancillary." *Id.* (citations omitted). "This exception to the Eleventh Amendment bar is limited, however, to injunctive relief granted on the basis of federal law." *Id.* (citations omitted). Therefore, to the extent that Sweeney's claims against Dawson and LaBouchardiere in their official capacities seek prospective relief they are not barred by the Eleventh Amendment[6] but the claim against Sweeney in her official capacity for prospective relief is dismissed as moot as she is no longer employed at LRC.[7]

Suits brought under 42 U.S.C. § 1983 against state officials in their individual capacity are not proscribed by the Eleventh Amendment. *Hafer*, 502 U.S. at 25. Thus, the

---

[6] However, these claims for prospective relief will be also dismissed for failure to state a claim. See *infra* ¶ I. A.

[7] Sweeney alleged, and Karimi agreed, that Sweeney is no longer employed by the State of Nebraska. Pl. Br., ECF No 40, Page ID 165.

Eleventh Amendment does not preclude Karimi's § 1983 claim against Defendants in their individual capacities, alleging violations of his constitutional rights.[8]

### A. Qualified Immunity

"Qualified immunity shields a government official acting in his individual capacity from liability 'unless his conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thompson v. Shock*, 852 F.3d 786, 790 (8th Cir. 2017) (quoting *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Thus, "[a] government official is entitled to qualified immunity unless (1) the official violated a plaintiff's constitutional right and (2) that right was clearly established at the time of the violation." *Wallace v. City of Alexander*, 843 F.3d 763, 768 (8th Cir. 2016) (citing *Pearson*, 555 U.S. at 232).

Karimi alleges the Defendants deprived him of his right to liberty and property without due process of law in violation of the Fourteenth Amendment. Am Compl., ECF No. 24, Page ID 97. Specifically, he alleges Defendants violated his constitutional rights by failing to properly enforce, apply, interpret, calculate, implement, and comply with the rules, regulations, policies, procedures and laws regarding the proper diagnosis and treatment of mental health patients. Am. Compl., ECF No 24, Page ID 97, 98, 99. He also

---

[8] Dawson and LaBouchardiere allege that they have not been served in their individual capacities and argue only for dismissal in their official capacities. Def. Br., ECF No. 33, Page ID 138. Sweeney argues for dismissal in both her individual and official capacities. Sweeney Mot. to Dismiss, ECF No. 30. Donovick is not included as a party in either motion currently pending before the Court.

alleges his rights were violated when Defendants damaged his reputation in the community by questioning his mental health diagnoses and evaluations and making false accusations at staff meetings *Id*. Finally, he alleges Defendants violated his rights by failing to provide him a due process hearing. *Id*.

### 1. Deficiencies in the Operation of LRC

Defendants' alleged failure to properly enforce, apply, interpret, calculate, implement, and comply with rules, regulations, policies, procedures, and laws regarding the proper diagnosis and treatment of mental health patients did not violate Karimi's constitutional rights and Karimi does not attempt to assert the rights of his patients. Karimi cites *Norfleet v. Arkansas Dept. of Human Services*, where the Eighth Circuit affirmed the denial of summary judgment on the basis of qualified immunity. 989 F.2d 289, 293 (8th Cir. 1993). In *Norfleet* denial of qualified immunity was based on the allegation that defendants were deliberately indifferent to the medical needs of plaintiff's son which deprived him of life without due process of law when a foster parent failed to provide asthma medication resulting in the child's death. *Id*. at 290-91. Karimi also argues that Sweeney violated Neb. Rev. Stat. § 38-2113(3) when she interfered with his medical orders and patient treatment.[9] Karimi alleges Defendants, including Sweeney, were responsible for improper care received by his patients at LRC. While the Defendants' alleged actions or inactions may have violated the patients' constitutional rights and possibly constituted unauthorized practice of medicine, Karimi has not expressly stated

---

[9] Neb. Rev. Stat. § 38-2113(3) defines independent mental health practice as not including "the practice of psychology or medicine, prescribing drugs or electroconvulsive therapy, treating physical disease, injury, or deformity, or measuring personality or intelligence for the purpose of diagnosis or treatment planning."

or argued that he is attempting to assert the constitutional rights of his patients[10] and the allegations against the Defendants do not demonstrate any violation of Karimi's own constitutional rights.[11] Thus, Sweeney is entitled to qualified immunity on Karimi's claim with respect to her involvement in the alleged deficient operation of LRC, because the deficiencies in the operations of LRC did not violate Karimi's constitutional rights.

### 2. False Accusations and Damage to Karimi's Reputation

"Defaming a governmental employee's reputation, good name, honor, or integrity in connection with terminating the employee, without giving the employee a name-clearing hearing, is a deprivation of the employee's constitutionally protected liberty interest." *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007) (citing *Winskowski v. City of Stephen,* 442 F.3d 1107, 1109–10 (8th Cir. 2006), *cert. denied,* 549 U.S. 975 (2006); *Bd. of Regents v. Roth,* 408 U.S. 564, 573 (1972)). "Defamation, for purposes of a due process claim, occurs when a state official 'publicly made allegedly untrue charges against [the employee] that would stigmatize [him] so as to seriously damage [his] standing and associations in [his] community, or foreclose [his] freedom to take

---

[10] A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Litigants have been permitted to bring actions on behalf of third parties provided 1) the litigant has suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute, 2) the litigant has a close relation to the third party, and 3) there exists some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (citations omitted). However, even if Karimi had argued that he sought to enforce the rights of his patients, he would lack standing to do so because Karimi has not demonstrated how the alleged failure to follow proper procedures regarding diagnosis and treatment of mental health patients injured him. Thus, he does not have a sufficient interest in the outcome with respect to this claim.

[11] In opposition to Sweeney's Motion to Dismiss, Karimi argues that Sweeney is not entitled to qualified immunity because Karimi "had the constitutional right to practice medicine in accordance with accepted rules and regulations, and to not be deprived of a property or liberty interest by State actions." Pl. Br., ECF 40, Page ID 168. However, this alleged right was never mentioned by Karimi in his Amended Complaint, he provides no legal authority that it is among those protected by the Constitution, and he has not alleged that he has in any way been deprived of his right to practice medicine.

advantage of other employment opportunities.'" *Mascho v. Gee*, 24 F.3d 1037, 1039 (8th Cir. 1994) (citing *Shands v. City of Kennett,* 993 F.2d 1337, 1347 (8th Cir.1993)). To state a "stigma plus"[12] claim, the employee must allege: (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public, and (4) an alteration or extinguishment of a right or legal status. *Brown*, 478 F.3d at 923 (citations omitted).

Here, Karimi failed to allege any alteration or extinguishment of a right or legal status or that any of the statements he refers to as defamatory were made during the course of his termination.[13] In his Amended Complaint, Karimi does not allege that he has in any way been stripped of his right to practice medicine or any other property interest. Instead he alleges generally that LRC does not comply with the accepted rules and regulations concerning the practice of medicine. Thus, the alleged damage to Karimi's reputation does not constitute a deprivation of a protected liberty or property

---

[12] To invoke the procedural protections of the due process clause, a loss of reputation must be coupled with some other tangible element to rise to the level of a protectible property interest, courts have referred to this as the "stigma plus" test. *Gunderson v. Hvass*, 339 F.3d 639, 644 (2003) (citations omitted).

[13] Karimi submitted an Index of Evidence in Support of Plaintiff's Brief in Opposition to Defendant Sweeney's Motion to Dismiss, ECF No. 41. The index consists of an Affidavit signed by Karimi's counsel indicating that Karimi's employment was terminated on November 16, 2018, and that Karimi was not given a pre-termination due process hearing. *Id.* at Page ID 178. The Affidavit also alleges that a recording exists of a conversation between Karimi and Defendant Dr. Roger Donovick where Karimi is discussing Sweeney's inappropriate control of LRC. The affidavit alleges that the conversation was recorded by one or more of the Defendants without Karimi's knowledge. *Id.* at 177-78. The Court did not consider this affidavit in ruling on the motions requesting dismissal. However, even if the Court had considered the fact that Karimi's employment was terminated, Karimi's claim still fails as the Affidavit does not connect the termination to any of the allegedly defamatory statements; fails to state which Defendants were involved in the termination; and fails to specify whether a name-clearing hearing was requested.

interest. "Injury to a person's reputation alone is not sufficient to trigger the procedural protections of the due process clause." *Brown*, 478 F.3d at 924 (citing *Paul v. Davis*, 424 U.S. 693, 701-02 (1976); *Gunderson v. Hvass,* 339 F.3d 639, 644 (8th Cir.2003)).

Karimi argues that "the defendants in this case transgressed the limitations, not the obligations, that the due process clause imposes on State actors" and became a "doer of harm, rather than merely an inept rescuer." Pl. Br., ECF No. 40, Page ID 173. He cites to *Gibson v. City of Chicago*, where the court reversed the district court's grant of qualified immunity on summary judgment after a victim was shot by an officer who had been placed on medical leave. 910 F.2d 1510, 1521 n. 19 (7th Cir. 1990). In *Gibson*, the reversal was based on the role the city was alleged to have played in creating danger to the victim, by not retrieving the officer's service weapon. *Id.* Karimi also cites to *White v. Smith*, where the Eighth Circuit affirmed the denial of qualified immunity to a team of investigators accused of conspiring to manufacture false evidence and procure false testimony, leading to the conviction and imprisonment—for more than eighteen years—of an innocent person. 696 F.3d 740, 754, 759 (8th Cir. 2012). In *Gibson* the victim was deprived of life, and in *White* the plaintiff was deprived of liberty. Here, Karimi has not demonstrated that he suffered actionable damage to his reputation, or was deprived of life or liberty, or was deprived of a property interest such as his ability to practice medicine.

### 3. Failure to Provide Due Process Hearing

"Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Karimi has not demonstrated that he was deprived of a protected liberty

or property interest. Thus, any failure to provide him with a due process hearing did not violate his constitutional rights.

Because Karimi has not demonstrated a deprivation of any of his constitutional rights, Sweeney is entitled to qualified immunity in her individual capacity and Karimi's first, second, and third causes of action against Sweeney in her individual capacity will be dismissed. Because the claims against Dawson and LaBouchardiere in their official capacities contained in the Amended Complaint are based on the same series of events as those against Sweeney, Karimi's claims against Dawson and LaBouchardiere for prospective relief will also be dismissed.[14]

## II. Fourth and Fifth Causes of Action - Rehabilitation Act Claims

Karimi's Amended Complaint asserts two separate causes of action under the Rehabilitation Act.[15] The Rehabilitation Act states "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794. "Under the Rehabilitation Act, states that

---

[14] The Brief in Support of Motion to Dismiss, ECF No. 33, filed by State of Nebraska and Dawson and LaBouchardiere in their official capacities, does not address whether a violation of Karimi's constitutional rights occurred or the availability of prospective relief. It focuses instead on the suit being barred by sovereign immunity and the State not qualifying as a person under 42 U.S.C. § 1983. Yet there is no need for the Court to permit Dawson and LaBouchardiere to remain as Defendants in their official capacities for potential prospective relief when no constitutional violation has been alleged.

[15] Karimi does not suggest that any of the Defendants are liable in their individual capacities for violations of Section 504, and any attempt to do so would fail because Section 504 of the Rehabilitation Act does not provide for individual-capacity suits against state officials. *See Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) (per curiam) (citation omitted).

accept federal funds are required by statute to waive their Eleventh Amendment immunity to § 504 claims." *Doe*, 345 F.3d at 598 (citing 42 U.S.C. § 2000d-7).

The State of Nebraska operated the LRC which was overseen by DHHS employees. Am. Compl., ECF No 24, Page ID 85. The State of Nebraska received federal funds to care for LRC patients who were eligible for either Medicare, Medicaid, or Social Security payments. *Id.* at 86. Thus, the State of Nebraska has waived its Eleventh Amendment Immunity to § 504 claims and DHHS[16] is subject to the requirements of Section 504.[17] See *U.S. v. Baylor Univ. Med. Ctr.,* 736 F.2d 1039, 1049 (5th Cir. 1984), *cert. denied*, 469 U.S. 1189 (1985) ("Baylor's receipt of Medicare and Medicaid payments subjects it to appropriate federal action under Section 504 of the Rehabilitation Act".)

### A. Fifth Cause of Action[18]

Karimi "seeks declaratory and injunctive relief in an Order requiring all Defendants in their official capacities to comply with all rules and regulation under the Act for its treatment of disabled patients." Am. Compl., ECF No. 24, Page ID 100.

---

[16] "The acceptance of funds by one state agency therefore leaves unaffected both other state agencies and the State as a whole." *Jim C. v. U.S.*, 235 F.3d 1079, 1081 (8th Cir. 2000).

[17] Because "'[a[ suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity,' a suit against a government official in only his official capacity should be dismissed as redundant if the employing entity is also named." *King v. City of Crestwood, Miss.*, 899 F.3d 643, 650 (8th Cir. 2018) (quoting *Veatch v. Bartels*, 627 F.3d 1254, 1257 (8th Cir. 2010). The State of Nebraska and DHHS have been named as defendants. Therefore, causes of action four and five, against Sweeney, LaBouchardiere, and Dawson in their official capacities will be dismissed.

[18] Defendants State of Nebraska, Dawson, and LaBouchardiere ask the Court to dismiss the fourth and fifth causes of action characterizing them as Section 1983 claims and do not address whether Karimi fails to state a claim under the Rehabilitation Act. Sweeney argued in the alternative that even if Section 504 applied to her, Karimi had not stated a claim because "Section 504 relates only to discrimination claims, not general complaints about facility operations." Sweeney Br., ECF No. 31, Page ID 131. Is clear from the Amended Complaint that Karimi's claims fail to state a claim for which relief can be granted.

To prevail on a claim under Section 504, "a qualified individual with a disability must be denied, on the basis of the individual's disability, the benefits of a program or activity of a public entity receiving federal funds." *Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 983 (8th Cir. 2013) (citations omitted). "[T]he Rehabilitation Act 'imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff.'" *Wojewski v. Rapid City Reg'l Hosp., Inc.,* 450 F.3d 338, 344 (8th Cir. 2006) (quoting *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1029 n. 5 (8th Cir.1999) (emphasis in original)). The Rehabilitation Act "was enacted 'to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others.'" *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting *Brennan v. Stewart,* 834 F.2d 1248, 1259 (5th Cir.1988)).

Except for Karimi's retaliation claim, his allegations of Rehabilitation Act violations stem from the treatment of disabled individuals who are patients at LRC. Karimi does not assert *he* is a qualified individual or that *he* was subject to discrimination based on his own disability.

Even if Karimi could demonstrate that he has standing to assert claims which belong to the patients at LRC, he alleges only that the treatment programs his patients received at LRC "do not always comply with the governing rules and regulations under the Rehabilitation Act," that "procedural and/or medical irregularities were occurring at Defendant's facility," and "that he protested the denial of these program benefits to disabled patients he has treated." Am. Compl., ECF No. 24, Page ID 87. Some of the specific deficiencies identified by Karimi include moving dangerous patients from in-patient beds to residential beds, improper distribution of the controlled substance Ambien,

failure to prevent patients from swallowing foreign objects, failure to implement necessary steps to secure patient safety, failure to use highly restrictive status on patients who required this status, and unnecessary denial of some patients' visitation rights. *Id.* at 88-89, 92. Karimi also alleges that LRC housed disabled patients without providing them necessary and appropriate services, contrary to federal law requirements, and that patient care was jeopardized by the failure to follow recommendations of physicians and outside consultants. *Id.* at 90-91.

Although Karimi alleges that the patients are qualified individuals with disabilities and that they received improper treatment at LRC, Karimi's Amended Complaint does not allege facts to support that the patients were treated in this manner because of their disability. Karimi's allegations demonstrate complaints of low quality mental health care, improper medical treatment decisions, and malpractice, which are not actionable under the Rehabilitation Act. See *Bryant v. Steele*, 25 F. Supp. 3d 233, 242 (E.D.N.Y. 2014) (As a general matter, neither the ADA nor the Rehabilitation Act applies to claims regarding the quality of mental health services, *Atkins v. County of Orange,* 251 F.Supp.2d 1225, 1232 (S.D.N.Y.2003), nor do the statutes "create a remedy for medical malpractice," *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (applying the ADA).); *Shelton v. Ark. Dep't of Human Servs.*, 677 F.3d 837, 843 (8th Cir. 2012) ("a claim based upon improper medical treatment decision[s] may not be brought pursuant to either the ADA or the Rehabilitation Act"); *Ortiz v. Neb. Douglas Co.,* No. 8:17CV412, 2018 WL 2163625, at *4 (D. Neb. May 10, 2018) ("Allegations of insufficient medical care, negligent medical care, or an insufficient medical program are not cognizable claims under the ADA or Rehabilitation Act."); *Colbert v. D.C.,* 78 F. Supp. 3d 1, 16 (D.D.C. Jan. 12, 2015) ("The

Act prohibits discrimination based on disability; it does not impose a standard of care or a minimum level of services that must be provided to the disabled."). Thus, the fifth count in Karimi's Amended Complaint will be dismissed.

### B. Fourth Cause of Action

Karimi's alleges that "Defendant, State of Nebraska, and other Defendants in their official capacities, unlawfully retaliated against the Plaintiff for seeking to enforce all requirements of the Rehabilitation Act in order to protect disabled patients housed at the Lincoln Regional Center." Am. Compl., ECF No. 24, Page ID 100. To succeed in his retaliation claim, Karimi must demonstrate that (1) he engaged in a statutorily protected activity, (2) his employer took an adverse action against him, and (3) there was a causal connection between the adverse action and the protected activity. *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013) (citing *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999)). Retaliation against a person who makes complaints of discrimination against a third party is actionable under the Rehabilitation Act. *Hoyt v. St. Mary's Rehabilitation Center*, 711 F.2d 864, 867 (8th Cir. 1983). However, the party alleging retaliation must have asserted that the third party was being discriminated against because of their disability. See *Id.* ("Until this suit was filed Hoyt never asserted that [the patient] was being discriminated against on account of her handicap.")

Karimi states he "noted what he thought to be procedural and/or medical irregularities that were occurring in Defendant's facility" and "reported these violations to the Defendant's employee in charge of the facility." Am. Compl., ECF No. 24, Page ID 87. Karimi also states that he "protested . . . the denial of these program benefits to disabled patients he has treated" and that Defendants "took no action to correct the deficiencies

cited by Plaintiff, and engaged in retaliatory conduct against him for reporting said deficiencies." *Id.* at 87-88. Karimi states that he "has attempted to bring the Defendants in compliance with federal regulations and requirements under the Rehabilitation Act, but has been admonished and punished for his efforts in this regard" and that LRC continues to be operated "in derogation of its duties under the Act." *Id.* at 93.

Karimi's factual allegations amount only to general complaints about the quality of care received by patients at LRC and general mismanagement of the facility. To support a claim based on retaliation under the Rehabilitation Act, Karimi must demonstrate that he reasonably believed[19] and complained that the poor treatment and denial of programs to disabled patients he treated was because of their disability. Karimi alleges that the LRC patients were disabled and received improper care but he does not allege that he made complaints that the patients were treated improperly *on account of* their disabilities. Therefore, Karimi's Amended Complaint does not demonstrate he engaged in statutorily protected activity and his fourth cause of action will be dismissed.

## III. Sixth Cause of Action - Defamation Claim against Sweeney

Karimi's sixth cause of action in his Amended Complaint states that "Defendant Sweeney, acting in her personal capacity, has defamed Plaintiff and damaged his reputation in the community and the workplace." Am. Compl., ECF No. 24, Page ID 100. Sweeney argues Karimi's state-law defamation claim against her is barred by sovereign immunity and the statute of limitations. Sweeney Br., ECF No. 31, Page ID 121. Karimi

---

[19] Courts have found that an informal or a formal complaint about, or other opposition to, an employer's practice or act may be protected if the employee reasonably believes such an act to be a violation of the statute in question. *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2000).

"agrees to withdraw the Sixth Cause of Action in the Amended Complaint, the defamation claim against Sweeney in her personal capacity." Pl.'s Br., ECF No. 40, Page ID 163. Therefore, Karimi's sixth cause of action will be dismissed.

## CONCLUSION

Karimi's Amended Complaint, ECF No. 24, against Defendants State of Nebraska, DHHS, [20] Dawson and LaBouchardiere in their official capacities, and Sweeney in her official and individual capacities, will be dismissed. Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss, ECF No. 30, filed by Defendant Stacey Sweeney is granted;

2. The Motion to Dismiss, ECF No. 32, filed by the State of Nebraska,[21] and Sheri Dawson and Mark LaBouchardiere in their official capacities, is granted; and

3. The Clerk is directed to amend the caption by eliminating Defendants State of Nebraska, Department of Health and Human Services, and Stacey Sweeney, and by noting that Defendants Sheri Dawson and Mark LaBouchardiere remain as Defendants in their individual capacities only.

Dated this 10th day of January, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge

---

[20] "Generally, suits against state agencies are considered suits against the state itself." *James v. Nebraska*, No. 8:09CV112, 2009 WL 10664338, at *3 (D. Neb. Nov. 17, 2009) (citing *Menser v. Nebraska*, No. 8:01-CV-635, 2002 WL 1558213, at *2 (D. Neb. July 12, 2002). Therefore, the request for dismissal by the State of Nebraska also serves as a request for dismissal by DHHS to the extent DHHS is intended by Karimi to be a separate defendant.

[21] Including the Department of Health and Human Services.