# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DR. FARID KARIMI,<br><br>            Plaintiff,<br><br>  vs.<br><br>DR. ROGER DONOVICK, in his official and individual capacities; SHERI DAWSON, in her individual capacity; and MARK LABOUCHARDIERE, in his individual capacity;<br><br>            Defendant. | 8:18CV3088<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion to Dismiss, ECF No. 44, filed by Defendants Sheri Dawson and Mark LaBouchardiere, in their individual capacities. For the reasons stated below, the Motion will be granted.

## BACKGROUND

The following facts are a summary of those alleged in the Amended Complaint, ECF No. 24, and assumed true for the purposes of the Motion to Dismiss. Defendant State of Nebraska operates the Lincoln Regional Center ("LRC"), an entity responsible for the diagnosis and treatment of patients with mental health issues. Plaintiff Dr. Farid Karimi works as a forensic psychiatrist at the LRC and other locations. In February 2016, LRC hired Karimi to perform forensic evaluations for the courts, to assist with training psychiatric residents in forensic rotation, and to establish a forensic fellowship program. Karimi properly performed all duties and assignments.

Defendant Stacey Sweeney was a State of Nebraska employee and functioned as the LRC Chief Operating Officer. She was supervised by Defendant Sheri Dawson, a Department of Health and Human Services ("DHHS") employee. Defendant Dr. Roger Donovick was LRC Chief Medical Officer. Defendant Mark LaBouchardiere is the current DHHS Facilities Director and has been in charge of LRC since February 2018.

After several months of employment, Karimi noted procedural and/or medical irregularities occurring at LRC. He reported these violations to Donovick, Sweeney, and/or Dawson. At LRC, Karimi provided programs and services for patients with disabilities. Most of these patients were not aware of their rights under the Rehabilitation Act, 29 U.S.C. §§ 701-796.[1] Karimi "has protested to . . . Dawson and LaBouchardiere, the denial of these program benefits to disabled patients he has treated." Am. Compl., ECF No. 24, Page ID 87. Karimi alleges that "Defendants took no action to correct the deficiencies cited by Plaintiff, and engaged in retaliatory conduct against him for reporting said deficiencies."

Specifically, Karimi alleges Defendants, under the direction of Donovick and Sweeney and with the approval of Dawson and later LaBouchardiere:

1) followed outdated treatment policies and refused to re-evaluate or put into place policies and procedures to secure patient safety and well-being;

2) failed to use highly restrictive status restraints on patients requiring this status which resulted in repeated assaults and injuries to LRC employees;

---

[1] Karimi also alleges that these patients were not aware that treatment programs they received did not always comply with the governing rules and regulations under the Rehabilitation Act. However, whether the treatment programs complied with the Rehabilitation Act is a legal conclusion not an assertion of fact.

2

3) allowed the assistant director of nursing to follow the orders of non-medical psychologists which disturbed the proper performance of medical activities and procedures vital to patient care;

4) failed to follow the level of security required for patient monitoring; and

5) through staff psychologists, requested forced medication orders from the court for one of Karimi's patients without informing the attending psychiatrist.

Karimi also alleges that one or more of the Defendants:

1) changed patient orders dictated by attending physicians, such as discharging patients or removing them from suicide watch (Sweeney and Donovick);

2) inaccurately charted time with patients, and unnecessarily denied visitation rights to some patients (Sweeney and Donovick);

3) told staff not to listen to or follow Karimi's orders (Donovick);

4) interfered with Karimi's patient relations[2] (Sweeney);

5) allowed improper distribution of the controlled substance Ambien to Karimi's patients without Karimi's knowledge (State of Nebraska, Sweeney, and Dawson);

6) moved dangerous patients admitted under Karimi's name from in-patient to residential beds in violation of Court orders (Sweeney with Donovick and Dawson's approval);

7) housed mentally challenged and disabled individuals without providing them with necessary and appropriate needed services (State of Nebraska); and

---

[2] Specifically, in June 2018, Karimi was asked by Lincoln Police to see a patient and Sweeney ordered the patient removed from LRC before Karimi could see the patient.

3

8) jeopardized patient care by not following the recommendations of physicians and outside consultants (State of Nebraska).

Karimi also reported general concerns about the functioning of LRC which included:

1) assignment of a psychologist to oversee the medical units which should have been run by medical doctors;

2) use of job threats to staff to cover management deficiencies, such as ordering minutes of official meetings to be changed and authorizing documents suggesting nurses were working when they were not;

3) assignment of psychologists without medical expertise to be supervisors in charge of medical and psychological patient treatment, resulting in psychiatrists working under improper supervision;

4) changes to the minutes of staff meetings and falsification of information needed to meet requirements of state and federal agencies;

5) allowing an unlicensed professional to operate the facility in violation of state statutes and regulations;

6) mismanagement resulting in attacks on technicians; and

7) understaffing resulting in diminished patient care and a back-up in admissions, causing patients to wait in jail.

Karimi alleges he "has attempted to bring the Defendants into compliance with federal regulations and requirements under the Rehabilitation Act, but has been admonished and punished for his efforts in this regard." *Id.* at 93. Karimi alleges that due to his reporting of the activities at LRC he has been subjected to retaliatory acts from Defendants. Specifically, he alleges Defendants altered his job duties in violation of his

contract and initial job posting; deprived him of decision-making capacities in the hospital; did not inform him about the Policy and Procedure Committee or Improvement Committee meetings to which he was assigned; eliminated the Steering Committee to limit his ability to participate in proper facility management; stopped including him on mass emails; negated orders he issued; failed to follow his medical instructions; and gave him a higher work load than other physicians. He also alleges Donovick and Sweeney bypassed him in connection with his patients' care and made medication recommendations to the court without his input.

He further alleges that in October 2016, the State of Nebraska, Sweeney, and Donovick falsely accused him of making terroristic threats and communicated this to other physicians and third parties. He states that on or about November 2016, Donovick and Sweeney falsely accused him of attempting to kidnap a patient and communicated this to other physicians and third parties. He states that Defendants falsely accused him of being emotional and unprofessional, and, on January 6, 2017, State of Nebraska and Donovick gave him a written warning for being disrespectful, unprofessional, and hostile toward staff and leadership members although such accusations were false. He states that although he was initially told he would lead the training of psychiatry residents, this changed on or about February 2017. He contends that in March 2018, Sweeney falsely accused him of giving a patient an incorrect prescription and practicing outpatient psychiatry from his office at LRC. Finally, he alleges that the State of Nebraska and Donovick initially refused to allow him to withdraw his resignation. Karimi contends that he has suffered emotional pain and injury, humiliation, fear, and embarrassment.

Karimi's Amended Complaint, ECF No. 24, filed on October 10, 2018, sets forth eight causes of action. His first, second, and third cause of action are claims under 42 U.S.C. § 1983 and 42 U.S.C. §1988(a). His fourth and fifth cause of action are claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 against Defendants in their official capacities. His sixth, seventh, and eighth causes of action are state-law defamation claims against Sweeney, Donovick, and Dawson respectively, in their individual capacities.

On January 10, 2019, the Court issued a Memorandum and Order, ECF 43, dismissing all claims against the State of Nebraska, and Sweeney. The Memorandum and Order also dismissed all claims against Dawson and LaBouchardiere in their official capacities. At the time of the Memorandum and Order, Dawson and LaBouchardiere only requested dismissal of the claims against them in their official capacities and alleged they had not yet been served in their individual capacities. On February 1, 2019, Dawson and LaBouchardiere, in their individual capacities, filed the pending Motion to Dismiss.

**STANDARD OF REVIEW**

**I. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)**

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young Am. Corp. v. Affiliated Comput. Servs.,* 424 F.3d 840,

843-44 (8th Cir. 2005) (citing *Titus*, 4 F.3d at 593). The plaintiff has the burden of proving jurisdiction exists. *Osborn*, 918 F.2d at 730. "Sovereign immunity issues are jurisdictional issues, and state defendants may invoke sovereign immunity with a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *James v. Nebraska*, No. 8:09CV112, 2009 WL 10664338, at *3 (D. Neb. Nov. 17, 2009) (citing Fed. R. Civ. P. 12(b)(1); *Hagen v. Sissteon-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000)).

**II. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a

7

savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

**I. § 1983 Claims Against Dawson and LaBouchardiere in their Individual Capacities**

**A. Deficiencies in the Operation of LRC**

Karimi's Amended Complaint alleges that Dawson and LaBouchardiere[3] "[f]ailed to properly enforce, apply, interpret, calculate, implement, and comply with the rules, regulations, policies, procedures and laws regarding the proper diagnosis and treatment of mental health patients . . .." ECF. No. 24, Page ID 99. Karimi alleges that he has standing to assert the rights of his patients with respect to the deficiencies in LRC's operation and that these deficiencies caused a deprivation of his right to practice medicine. The Court disagrees.

*1. Karimi Was Not Deprived of the Right to Practice Medicine*

Karimi argues the deficiencies in the operation of LRC have deprived him of his right to engage in his occupation of choice, the practice of medicine. Specifically, Karimi argues that he was deprived of his "ability to properly care for his patients and to practice

---

[3] Karimi alleges that the "actions were taken by Defendant, State of Nebraska, . . . and its employees." Am. Compl., ECF No. 24, Page ID 97-99. It is unclear whether Karimi's reference to "employees" implicates LaBouchardiere, for purposes of this Motion, the Court will assume it does.

8

medicine in an unfettered manner," that he was forced to "work under conditions he knew were not in compliance with governing statutes and regulations" which hindered his practice of medicine and that Dawson and LaBouchardiere did nothing to stop it. Pl. Br., ECF No. 46, Page ID 235.

In *Meyer v. Nebraska*, the Supreme Court stated that liberty includes the right "to engage in any of the common occupations of life." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The Supreme Court has explained "that this liberty right to engage in an occupation extends to a person's ability to engage in a 'field of private employment.'" *Singleton v. Cecil*, 176 F.3d 419, 426 n.8 (8th Cir. 1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999). In *Gabbert*, the Court made it "clear that this right had been afforded substantive due process protection only when the government 'complete[ly] prohibit[s],' rather than 'brief[ly] interrupt[s],' a person from engaging in his desired occupational field." *Id.* (quoting *Gabbert*, 526 U.S. at 292). In fact, even a discharge by a government employer does not violate an employee's right to occupational liberty. *Id.* at 424. "[T]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.* (quoting *Bishop v. Wood*, 426 U.S. 341, 349-50 (1976)).

Assuming the right to engage in the practice of medicine is a protected liberty interest, Karimi has not sufficiently pled that he was deprived of his right to engage in the practice of medicine. Karimi alleges many deficiencies in the operation of LRC which may have made practicing medicine at LRC more difficult. For example, Karimi alleges Dawson allowed the improper distribution of Ambien, a controlled substance, to Karimi's patients without his knowledge. Am. Compl., ECF No. 24, Page ID 88. Sweeney, with

apparent approval from Dawson, allegedly moved dangerous patients admitted under Karimi's name from in-patient beds to residential beds. *Id.* Dawson allegedly failed to re-evaluate the suicide watch and secure room policy despite Karimi reporting various incidents of patients swallowing foreign objects. *Id.* at 89. Defendants allegedly allowed assistant directors of nursing to follow orders of non-medical psychologists, which disturbed proper performance of medical activities such as receiving timely lab reports and addressing medication errors. *Id.* at 89. Dawson, by and through staff psychologists, allegedly requested forced medication orders from a court for one of Karimi's patients without informing the attending psychiatrist. *Id.* at 92.

Karimi also alleged that the Defendants deprived him of decision-making capacities in the hospital and limited his ability to participate in proper facility management by eliminating the committee responsible for making critical hospital decisions. *Id.* 90-91. Defendants also allegedly negated orders that he issued, failed to follow his medical instructions, and denied him the opportunity to lead the training of psychiatry residents. *Id.* at 94.

Although these actions allegedly taken by Dawson and LaBouchardiere may have made practicing medicine at LRC more difficult, they represent only brief interruptions to Karimi's practice of medicine and do not rise to the level of a complete deprivation of the right to engage in the practice of medicine.

### 2. *Karimi Cannot Assert the Claims of LRC Patients.*

In his brief, Karimi attempts to assert the rights of his patients under a theory of third party standing.[4] However, this attempt fails for three reasons. First, the § 1983 claims contained in Karimi's Amended Complaint allege only that "Defendants' actions deprived Plaintiff of his right to life and liberty without due process of law in violation of the Fourteenth Amendment . . .." ECF No. 24, Page ID 97-99. Second, Karimi does not specify which constitutional rights of his patients he believes Dawson and LaBouchardiere violated. Third, Karimi has not been injured by the alleged improper medical care provided to his patients at LRC.[5]

Thus, the deficiencies in the operations at LRC did not violate any of Karimi's constitutional rights.

**B. False Accusations and Damage to Karimi's Reputation**

Karimi argues that the Dawson and LaBouchardiere made, or allowed to be made, defamatory statements about Karimi and that these statements, combined with the alleged adverse employment actions he suffered, constitute a violation of his constitutional rights.

"Defaming a governmental employee's reputation, good name, honor, or integrity in connection with terminating the employee, without giving the employee a name-

---

[4] A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Litigants have been permitted to bring actions on behalf of third parties provided 1) the litigant has suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute, 2) the litigant has a close relation to the third party, and 3) there exists some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (citations omitted).

[5] Karimi argues that he was injured because Defendants retaliated against him for reporting the violations of his patients' rights, not because of the improper medical care itself.

clearing hearing, is a deprivation of the employee's constitutionally protected liberty interest." *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007) (citing *Winskowski v. City of Stephen,* 442 F.3d 1107, 1109–10 (8th Cir. 2006), *cert. denied,* 549 U.S. 975 (2006); *Bd. of Regents v. Roth,* 408 U.S. 564, 573 (1972)). This is known as a stigma-plus claim. *Id.* "Defamation, for purposes of a due process claim, occurs when a state official 'publicly made allegedly untrue charges against [the employee] that would stigmatize [him] so as to seriously damage [his] standing and associations in [his] community, or foreclose [his] freedom to take advantage of other employment opportunities.'" *Mascho v. Gee*, 24 F.3d 1037, 1039 (8th Cir. 1994) (citing *Shands v. City of Kennett,* 993 F.2d 1337, 1347 (8th Cir.1993)).

> To state a "stigma plus" claim, the employee must allege: (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public, *Mascho v. Gee,* 24 F.3d 1037, 1039 (8th Cir.1994); and (4) an alteration or extinguishment of a right or legal status, *Paul v. Davis,* 424 U.S. 693, 711, 96 S. Ct. 1155, 47 L.Ed.2d 405 (1976).

*Brown*, 478 F.3d at 923. The Eighth Circuit has stated that the "internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment." *Hughes v. Whitmer*, 714 F.2d 1407, 1417 (8th Cir. 1983) (quoting *Moore v. Otero*, 557 F.3d 435, 438 (5th Cir. 1977); *Brown*, 478 F.3d at 923 n.3.

Dawson and LaBouchardiere argue that Karimi failed to plead the "plus" in his stigma-plus claim because he did not allege the defamatory statements were made in the course of termination or that they altered or extinguished a legal right or status. Karimi

12

argues that he has a liberty interest in his ability to practice medicine and he was deprived of this protected right by the actions of Dawson and LaBouchardiere.[6]

Karimi has not pled that he was terminated from employment. Although his job duties changed in that he was not training residents and his ability to participate in facility management was limited, he was not transferred to a different department where he could not continue to practice medicine, and he has not pled any facts that suggest the changes constituted such a change of status as to be regarded essentially as a loss of employment. Thus, Karimi has failed to satisfy the "plus" portion of his stigma-plus claim.

Karimi argues that something less than a complete termination from employment is sufficient to satisfy the "plus" factor. In support, Karimi takes the position that the language contained in *Paul v. Davis*, that requires reputational damage plus "some more tangible interest such as employment" leaves open the possibility that alterations or extinguishments of rights, or a legal status other than termination, could satisfy the "plus" requirement. 424 U.S. at 701.

Karimi cites to *Greenwood v. New York*, where the Second Circuit found that the revocation of a staff psychiatrist's clinical staff privileges, which constituted a protected property interest, was enough to satisfy the plus requirement. 163 F.3d 119, 124 (2d Cir. 1998) ("government defamation combined with the deprivation of a property interest in clinical privileges gave rise to a due process liberty interest"). Karimi also cites *Hill v. Kutztown*, where defamatory statements made about an employee in the process of a constructive discharge deprived him of a liberty interest protected by the due process

---

[6] A discussed *supra*, Karimi has not been deprived of his ability to practice medicine.

13

clause. 455 F.3d 225, 235 (3d Cir. 2006). Finally, Karimi cites to *Ridpath v. Bd. of Governors Marshall Univ.,* where the Fourth Circuit found the "plus" requirement was satisfied when the plaintiff was discharged from his teaching position as Adjunct Professor in the Exercise and Sports Science Department yet allowed to continue as Director of Judicial Programs. 447 F.3d 292, 302 (4th Cir. 2006). The Fourth Circuit found this to be a "significant demotion to a position outside of his chosen field, rendering it tantamount to an outright discharge." *Id.* at 310.

Even assuming, without deciding, that something less than a termination could satisfy the "plus" factor, the cases cited by Karimi do not demonstrate that the allegations pled by Karimi would satisfy the "plus" requirement. Karimi has not pled or argued that he has been deprived of any protected property right[7] such as his clinical staff privileges or license to practice medicine. He has also not pled that he lost pay or suffered a significant demotion to a position outside his chosen field of medicine that could be considered tantamount to an outright discharge. Thus, the Court finds that Karimi's stigma-plus claim fails because he has not alleged termination from his employment or the alteration or extinguishment of a legal right or status in connection with the allegedly stigmatizing statements

### C. Failure to Provide Due Process Hearing

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process

---

[7] Although Karimi's Amended Complaint states that he has a "property interest in his job," ECF No. 24, Page ID 86, his Amended Complaint does not allege that he has been deprived of his job. In fact, Karimi's Amended Complaint states that he continues to work as a licensed psychiatrist at the facility. *Id.*

14

Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Karimi has not demonstrated that he was deprived of a protected liberty or property interest. Thus, any failure to provide him with a due process hearing did not violate his constitutional rights.

Because none of the actions taken by Dawson and LaBouchardiere constituted a violation of Karimi's constitutional rights, the § 1983 claims against them in their individual capacities will be dismissed.

## II. State Law Defamation Claim Against Dawson (Eighth Cause of Action)

Karimi's eighth cause of action alleges that Dawson, in her individual capacity, "defamed [Karimi] and damaged his reputation in the community and the workplace by refusing to retract the false statements made about [Karimi]." Am. Compl., ECF No. 24, Page ID 100. Dawson argues that Karimi's defamation claim is a claim against Dawson in her official capacity and should be dismissed under Fed. R. Civ. P. 12(b)(1)[8] for lack of subject matter jurisdiction due to Eleventh Amendment sovereign immunity.

"Under Nebraska law, a state official acting within the scope of his or her employment at the time of an alleged tort must be sued in his or her official capacity, and the plaintiff must 'comply with the requisites set out in the [Nebraska State Torts Claim Act[9] (STCA)].'" *Montin v. Moore*, 846 F.3d 289, 292 (8th Cir. 2017) (quoting *Bohl v. Buffalo Cty.,* 251 Neb. 492, 557 N.W.2d 668, 673 (1997)). Although Karimi's Amended Complaint states that the eighth cause of action is brought against Dawson "acting in her personal

---

[8] Dawson presents a facial challenge to subject matter jurisdiction.

[9] Neb. Rev. Stat. § 81–8,209, et seq.

15

capacity" it also states that "[a]t all relevant times, Defendants acted under color of State law and within the scope of their employment." Am. Compl., ECF No. 24, Page ID 86, 100. Thus, the allegations against Dawson for defamation are against her in her official capacity as a state employee and subject to the limitations of the STCA.

Even assuming Karimi's state law tort claim is included in the STCA's waiver of sovereign immunity, any waiver does not extend to actions brought in federal court. *Montin*, 846 F.3d at 293 (citing Neb. Rev. Stat. § 81-8,214 (requiring all claims under Nebraska's STCA be brought in state district court)). "The federal district court's ability to exercise supplemental jurisdiction does not override sovereign immunity preserved by the Eleventh Amendment." *Montin v. Moore*, No. 4:14CV3142, 2015 WL 10945544, at *3 (D. Neb. June 30, 2015), *aff'd*, 846 F.3d 289 (8th Cir. 2017). Thus, Karimi's state law defamation claim brought in federal court will be dismissed.

## CONCLUSION

Karimi's Amended Complaint, ECF No. 24, against Defendants Dawson and LaBouchardiere, in their individual capacities, will be dismissed.

Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss, ECF No. 44, filed by Defendants Sheri Dawson and Mark LaBouchardiere in their individual capacities, is granted;

2. The individual capacity claims against Sheri Dawson and Mark LaBouchardiere are dismissed, without prejudice; and

3. The Clerk is directed to amend the caption by eliminating Defendants Sheri Dawson and Mark LaBouchardiere.

Dated this 29th day of March 2019.

                                        BY THE COURT:

                                        s/Laurie Smith Camp
                                        Senior United States District Judge